UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:16-cv-81572-CIV-MARRA/MATTHEWMAN

BENNIE ROBINSON,

  Plaintiff,

vs.

JUSTIN HARRIS, individually, and
the CITY OF BOYNTON BEACH,
A Florida Municipal Corporation,

  Defendants.
_____/

## DEFENDANT CITY OF BOYNTON BEACH, MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

  Defendant, CITY OF BOYNTON BEACH ("City"), by and through the undersigned counsel and pursuant to Fed. R. Civ. Pro. 56, hereby moves this Court for the entry of final summary judgment in its favor as to all counts against it, and states the following in support thereof:

  1. The instant action arises out of the arrest of Plaintiff, Bennie Robinson on August 11, 2013 for resisting arrest without violence after Co-Defendant, Officer Justin Harris ("Harris"), attempted a traffic stop for excessive speed by the driver of vehicle in which the Plaintiff was a passenger. (SMF, ¶1 and 3).

  2. Count III of the Complaint is the only count asserted against the City. The remaining counts are asserted against Harris.

  3. In Count III the Plaintiff alleges a state law claim of false arrest/false imprisonment. (DE 1)

  4. As set forth in the incorporated memorandum of law, and based upon the

Case 9:16-cv-81572-KAM   Document 25   Entered on FLSD Docket 09/29/2017   Page 2 of 11

Case No. 9:16-cv-81572-CIV-MARRA/MATTHEWMAN

Statement of Material Facts ("SMF") filed concurrently and incorporated herein, summary judgment should be granted to the City as to Count III.

5. As a matter of law, summary judgment should be granted to the City as the City's alleged liability is derivative of the alleged liability of Officer Harris with regard to this arrest. The following memorandum of law will demonstrate that there is no genuine issue of material fact that Officer Harris had probable cause to arrest the Plaintiff. In addition, Officer Harris had, at a minimum arguable probable cause, to stop the vehicle and to arrest the Plaintiff.

## BACKGROUND FACTS

The Plaintiff was a passenger in a vehicle being driven by Shayla Valentine on August 11, 2013. (SMF ¶2) Defendant Harris was a road patrol officer with the Boynton Beach Police Department on this date. (SMF ¶4) Officer Harris attempted a traffic stop of the Valentine vehicle at or near NW 4th Street in Boynton Beach Florida. (DE 1, Paragraph 12, SMF ¶3) The traffic stop was based upon Officer Harris observation that the Valentine vehicle was speeding. (SMF ¶3, 4) Officer Harris was utilizing a marked police vehicle. (SMF ¶7) The officers activated their lights to conduct the traffic stop. (SMF ¶8, DE1, Paragraph 12) Officer Harris testified that the area where he was patrolling was a high crime and drug area. (SMF ¶9) He testified that traffic stops in that area usually draw a crowd. (SMF ¶10)

When the Valentine vehicle stopped, Officer Harris observed Valentine jump out of the vehicle. (SMF ¶11) Officer Harris testified "… her jumping out of the car sends up red flags. If I pull you over, I can guarantee you you're probably not going to jump out of your car. So when a driver jumps out of the car, the first thing I think is, why does the driver want to separate their possession of this vehicle? And then that, coupled with the fact, now a rather large guy is starting to show signs of aggression opening the passenger door, we're losing control of the situation."

(SMF, ¶12, 13)  Officer Harris testified that the Plaintiff was yelling toward the officers, rubbing his head and clenching his fists which created a fear that violence was about to take place. (SMF ¶14)  The Plaintiff also attempted to open the passenger door. (SMF ¶15)  The Plaintiff stated to Harris "Man you are not going to talk to her like that, you ain't going to talk to her like that" while he clenched his fists and opening the passenger door. (SMF ¶18)  The Plaintiff's action diverted the attention of Harris from the driver and the traffic stop. (SMF ¶19)

Officer Harris testified that this behavior created a fear that violence was about to take place. (SMF ¶16)  Officer Harris testified that any clenched fist is a threat to him and that his belief is that a clenched fist means the person is wanting to fight or battling in their head not to hit you. (SMF ¶17)

Officer Harris testified that the actions of the Plaintiff more than the words hindered the traffic stop, while he exited the vehicle continuing to yell at the officers with clenched fists (SMF ¶19, 20) The Plaintiff admits as his deposition that the situation with the driver and officers got "louder and louder" and that he did address the officers saying you don't have to talk to her that way. (SMF ¶21, 22)  These are the same words Officer Harris stated were used by the Plaintiff as he tried to exit the vehicle. (SMF ¶18)

## MEMORANDUM OF LAW

### SUMMARY JUDGMENT STANDARD

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008).  A fact is material if it "might affect the outcome of the suit under the

governing law." *Id*.

The moving party carries the initial burden of showing the absence of a genuine issue of material fact, which can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The nonmoving party bears the burden of coming forward with evidence of each essential element of his claim such that a reasonable jury could find in his favor. *Whittington v Town of Surfside*, 490 F.Supp. 2d 1239, 1248 (S.D. Fla. 2007). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id*.

## FALSE ARREST/IMPRISONMENT

To state a cause of action for false imprisonment, the plaintiff must establish four elements: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Harder v. Edwards*, 174 So.3d 524, 531 (Fla. 4th DCA 2015). Probable cause is an affirmative defense to a false arrest claim. *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004). Probable cause is a complete bar to an action for false arrest and false imprisonment. *Mas v. Metropolitan Dade County*, 775 So. 2d 1010, 1011 (Fla 3rd DCA 2001). Here, the City has asserted in the pleadings that Officer Harris had probable cause to arrest the Plaintiff. (DE 7, Affirmative Defense 3). Thus, if there is a finding of probable cause the City would be entitled to judgment as a matter of law.

## THERE WAS PROBABLE CAUSE FOR THE PLAINTIFF'S ARREST

Probable cause exists when the facts and circumstances are sufficient to warrant a prudent man to believe that the suspect had committed or was committing an offense. *Storck v. City of Coral Springs*, 354 F. 3d 1307, 1315 (11th Cir. 2003). Probable cause does not require convincing proof, or the same standard of conclusiveness to support a criminal conviction. *Lee v. Ferraro*, 284 F. 3d 1188, 1195 (11th Cir. 2002). Thus, whether or not the Plaintiff was ultimately charged and or convicted of any crime is irrelevant to a determination of probable cause.

"Probable cause is a fluid concept. It affords law enforcement officers some latitude for error." *City of Clearwater v. Williamson*, 938 So. 2d 985, 988 (Fla. 2nd DCA 2006). To determine whether there is probable cause in a case, a court should examine the totality of the circumstances. "Focusing on the totality of circumstances requires an assessment of probabilities in that particular factual context. These probabilities are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Id*. at 989. Thus, it is the probability of criminal activity that is the standard of probable cause. *Id*. As well, "officers who make an arrest without probable cause are still entitled to qualified immunity if there was arguable probable cause for the arrest." Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003)(internal quotations omitted)(emphasis added). "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." *Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir.2004). Even a mistaken but reasonable observation is sufficient to establish arguable probable cause. *Draper v. Reynolds*, 369 F. 3d 1270, 1282 (11th Cir. 2004) ("Even law enforcement officials who reasonably but mistakenly conclude

that probable cause is present are entitled to immunity."). In the context of a false arrest claim, an officer is entitled to qualified immunity where that officer had arguable probable cause, that is, where "reasonable officers in the same circumstances, and possessing the same knowledge could have believed that probable cause existed to arrest" the Plaintiff. *Davis v. Williams*, 451 F. 3d 759, 762–63 (11th Cir. 2006). Probable cause does not require overwhelmingly convincing evidence, only "reasonably trustworthy information. As a general rule, where facts constituting probable cause are not disputed, the question of whether probable cause exists is for the court. *Rothstein v. Jackson's of Coral Gables, Inc.,* 133 So.2d 331, 332 (Fla. 3d DCA 1961).

Florida Statute Section 843.02 is the statute under which the Plaintiff was arrested. To support a criminal conviction for this offense it must be proved that the officer was engaged in the lawful execution of a legal duty and that the actions of the arrestee by words, conduct or a combination thereof constitutes obstruction or resistance of that lawful duty. *C.E.L. v. State*, 24 So.3d 1181, 1185-86.

The act of conducting a traffic stop for the purpose of issuing a citation is considered the lawful execution of a legal duty. *Davis* at 764-65. *See* also, *Burnett v. Unified Gov't of Athens-Clarke Cty. GA.,* 395 F. App'x 567, 568 (11th Cir. 2010) (finding police officer who arrested plaintiff during traffic stop was acting within discretionary authority as "[t]he official responsibilities of a police officer on patrol include making traffic stops and arresting people). Officer Harris testified that he was on patrol and working traffic enforcement in the area of this incident (SMF ¶3-6). Officer Harris testified that the vehicle in which the Plaintiff was a passenger was moving at an excessive speed. (SMF ¶3) Officer Harris testified that he was travelling in a marked police vehicle at the time and that they activated their lights to make the traffic stop (SMF ¶7,8).

The Plaintiff testified that the driver of the vehicle, Shayla Valentine was not speeding. The Plaintiff testified that he "know she wasn't speeding"; however, when he was asked if he actually looked at the speedometer to see how fast she was driving, he testified that he did not. (SMF ¶23)

While Plaintiff testified that Valentine was not speeding, this testimony alone is insufficient to create a genuine issue of material fact, since even taking Plaintiff's version of the events as true and assuming that Officer Harris was mistaken in his observation, a mistaken but reasonable observation is sufficient to establish the requisite probable cause to make a traffic stop. *See Draper*, 369 F.3d at 1276, 1282 (11th Cir. 2004) (affirming summary judgment for officer on qualified immunity grounds, finding the plaintiff's testimony that his vehicle tag light was working did not directly contradict the officer's position that the registration plate was not clearly legible from fifty feet away on the night of the traffic stop and was insufficient to create a genuine issue of material fact as to whether officer had probable cause to stop vehicle for traffic violation). *Manners v. Cannella*, No. 15-CV-62071, 2016 WL 6395369 (S.D. Fla. Oct. 25, 2016). In *Manners*, the police officer testified that the plaintiff failed to stop at a stop sign, and the plaintiff testified that he did stop at the stop sign. *Id*. at *5. In determining whether the police officer had probable cause to make the traffic stop for the plaintiff's alleged failure to stop at a stop sign and thereafter arrest the plaintiff for fleeing and eluding, the Honorable Beth Bloom found that, despite the plaintiff's testimony that he had stopped at the stop sign, the officer "steadfastly stated that he witnessed" the plaintiff drive through the stop sign without making a complete stop, and thus, even taking the plaintiff's version of the facts as true and assuming the officer was mistaken in his observation, the officer still had probable cause to make the traffic stop. *Id*. at

5-6. Specifically, Judge Bloom, citing Draper, found that the officer's observation, even if mistaken, was reasonable and there was nothing to create a factual issue as to the officer's honesty and credibility or to support Plaintiff's allegations that the officer fabricated the basis for the traffic stop. *Id*. Likewise, in this case there is no evidence to create a factual issue surrounding the testimony of Officer Harris regarding the traffic stop.

With regard to the second element of the crime for which the Plaintiff was arrested, Officer Harris had probable cause to arrest the Plaintiff as the Plaintiffs words, conduct or a combination thereof constituted an obstruction or resistance of the lawful traffic stop. "Probable cause to arrest ... exists when the totality of the facts and circumstances within an officer's knowledge sufficiently warrant a reasonable person to believe that, more likely than not, a crime has been committed." *League v. State*, 778 So.2d 1086, 1087 (Fla. 4th DCA 2001).

With regard to the actions of the Plaintiff, Officer Harris testified that the area where he was patrolling was a high crime and drug area. (SMF ¶9) He testified that traffic stops in that area usually draw a crowd and that the driver (Shayla Valentine) jumped out of the vehicle which sends up "red flags." (SMF ¶10-12) Officer Harris testified "... her jumping out of the car sends up red flags. If I pull you over, I can guarantee you you're probably not going to jump out of your car. So when a driver jumps out of the car, the first thing I think is, why does the driver want to separate their possession of this vehicle? And then that, coupled with the fact, now a rather large guy is starting to show signs of aggression opening the passenger door, we're losing control of the situation. (SMF ¶10-13)

Officer Harris testified that this aggressive demeanor was also accompanied by the Plaintiff's attempt to open the passenger door. (SMF ¶13-15) Officer Harris testified that the Plaintiff was yelling toward the officers, rubbing his head and clenching his fists which created a

fear that violence was about to take place. (SMF ¶13-16) Officer Harris testified that the actions of the Plaintiff more than the words hindered the traffic stop, while he exited the vehicle continuing to yell at the officers with clenched fists. (SMF ¶17-20)

Mere words can violate Section 843.02 if they prevent an officer from performing his official duties. *DeRosa v. Sheriff of Collier County*, 416 F. App'x 839 (11th Cir 2001). Here, the actions and words of the Plaintiff directed the officers away from the traffic stop. (SMF ¶19-20) The Plaintiff admits as his deposition that the situation with the driver and officers "… started off routine and then she kept asking like, why did you pull us over. It started escalated." [sic] (SMF ¶24) The Plaintiff testified that Valentine raised her voice to the officers. (SMF ¶25). The Plaintiff testified that "It was getting louder and louder to the point I had to say something. It was out of hand. I was still in the car not saying anything. It got to the point where I had to say something. As a man, it was the way you talk to a person." (SMF ¶26) The Plaintiff testified he did address the officers saying "sir, you don't have to talk to her that way." (SMF ¶21-22) These are the same words Officer Harris stated were used by the Plaintiff as he tried to exit the vehicle. (SMF ¶18). Shayla Valentine testified that both she and the Plaintiff repeatedly asked the officers "why are you pulling us over?" (SMF ¶27). Valentine testified that the Plaintiff stated to the Officers "You're not going to talk to her, you don't talk to her like that." (SMF ¶28) Valentine testified that the Plaintiff addressed Officer Harris by saying "Man, why is talking to her like that?" repeatedly and that he was getting upset and shaking his head. (SMF ¶29) Valentine testified that the verbal exchange while they were in the car was between 10 to 20 minutes long. (SMF ¶30)

Officer Harris had probable cause to arrest the Plaintiff for violation of Florida Statute Section 843.02 as the testimony demonstrates that the Plaintiff's words and actions diverted the

officers away from a lawful traffic stop. The totality of the facts and circumstances within Officer Harris' knowledge would warrant a reasonable person to believe that, more likely than not, the Plaintiff intended to obstruct the officers, and did obstruct the officers by his words and actions in an already tense situation that all agree escalated. *League v. State*, 778 So.2d 1086, 1087 (Fla. 4th DCA 2001). The totality of the facts and circumstances within Officer Harris' knowledge would warrant a reasonable person to believe that, more likely than not, the Plaintiff was obstructing a lawful traffic stop. The undisputed facts in this matter demonstrate a probability of criminal activity that would allow for a finding of probable cause. *Williamson* at 989.

Further, even if Officer Harris is found not to have actual probable cause, Officer Harris is still entitled to qualified immunity as he had arguable probable cause to arrest the Plaintiff. A reasonable police officer possessing the same knowledge as Officer Harris could have believed that probable cause existed to arrest Plaintiff based upon his words and actions and the totality of the circumstances surrounding this traffic stop. *Davis* at 762–63. As the City's liability is based upon the actions of Officer Harris, the City would be entitled to judgment as a matter of law. *Whittington v Town of Surfside*, 490 F.Supp. 2d 1239, 1248 (S.D. Fla. 2007).

## CONCLUSION

Summary judgment should be granted to the City of Boynton Beach as to all the claims asserted against the City as there was probable cause for the Plaintiff's arrest which bars his claim for false arrest.

WHEREFORE, Defendant, CITY OF BOYNTON BEACH, respectfully requests this Court to enter an order granting final summary judgment in its favor, and awarding this Defendant costs and such other relief as this Court deems just and proper.

Case No. 9:16-cv-81572-CIV-MARRA/MATTHEWMAN

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been filed via the CM/ECF electronic case filing system and served via transmission of Notice of Electronic Filing generated by CM/ECF to: Hugh L. Koerner, Esq., counsel for Plaintiff, Sheridan Executive Centre, 3475 Sheridan Street, Suite 208, Hollywood, FL 33021 at hlklaw@hughkoerner.com and to Benjamin L. Bedard, Esq., Roberts, Reynolds, Bedard & Tuzzio, PLLC, counsel for Defendant, Justin Harris, 470 Columbia Drive, Bldg 101C, West Palm Beach, FL 33409 at bbedard@rrbpa.com and lberns@rrbpa.com this 29th day of September 2017.

          GOREN, CHEROF, DOODY & EZROL, P.A.
          Attorneys for Defendant, City of Boynton Beach
          3099 East Commercial Boulevard, Suite 200
          Fort Lauderdale, FL 33308
          Phone: 954.771.4500 / Fax: 954.771.4923

By:   /s/ Tracey A. DeCarlo
       JAMES A. CHEROF
       Florida Bar No. 291846
       jcherof@cityatty.com
       TRACEY A. DeCARLO
       Florida Bar No. 60259
       tdecarlo@cityatty.com