16-398/swk/nna

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-81572 CIV MARRA**

BENNIE ROBINSON,
   Plaintiff (s)

vs.

CITY OF BOYNTON BEACH, a
Florida municipal corporation, and
JUSTIN HARRIS, individually,
   Defendant(s).
_____/

## DEFENDANT'S, JUSTIN HARRIS, MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

  Defendant, JUSTIN HARRIS ("Officer Harris"), by and through the undersigned counsel and pursuant to Fed. R. Civ. Pro. 56, hereby moves this Court for the entry of final summary judgment in his favor as to all counts against him, and states the following in support thereof:

  1. The instant action arises out of the arrest of Plaintiff, Bennie Robinson ("Robinson"), on August 11, 2013 for obstruction in violation of Florida Statute § 843.02, during a traffic stop conducted by Officer Harris of a vehicle Plaintiff was a passenger in.

  2. In Counts I and II of the operative Complaint, Plaintiff alleges federal claims against Officer Harris pursuant to 42 U.S.C. § 1983 for retaliatory arrest in violation of the First Amendment and for false arrest in violation of the Fourth Amendment, respectively. [DE 1]. Additionally, in Count IV of the Complaint, Plaintiff alleges a state law claim of false arrest against Officer Harris. [DE 1]. Plaintiff also alleges state law claims against Defendant, the City of Boynton Beach ("the City") for false arrest in Count III of the Complaint. [DE 10].

3. As detailed in the incorporated memorandum of law, and based upon the Statement of Material Facts ("*SMF*") filed concurrently and incorporated herein, summary judgment should be granted to Officer Harris as to all of the claims asserted against him. As to the § 1983 claims for retaliatory arrest and false arrest, summary judgment should be granted in favor of Officer Harris as, based on the undisputed material facts, as a matter of law, Officer Harris is entitled to qualified immunity as he had probable cause, or at least arguable probable cause to arrest the Plaintiff. As to the state law false arrest claim, Officer Harris is entitled to summary judgment as he has immunity pursuant to Florida Statute § 768.28(9), as there is no evidence to support that Officer Harris acted with malice or in bad faith in arresting the Plaintiff.

## MEMORANDUM OF LAW

### SUMMARY JUDGMENT STANDARD

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*.

The moving party carries the initial burden of showing the absence of a genuine issue of material fact, which can be met by showing that the nonmoving plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007)(quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). If the moving party meets this burden, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its

favor." *Fickling,* 507 F.3d at 1034. Further, in cases where a defendant claims qualified immunity, "To defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994).

### QUALIFIED IMMUNITY LEGAL STANDARD

Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)(internal quotations omitted). Qualified immunity "protect[s] from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002)(internal quotations omitted). The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Accordingly, "[t]hat qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

In order to receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee,* 284 F.3d at 1194. A police officer "acts within the scope of his discretionary

authority when his conduct is undertaken pursuant to the performance of his official duties." *Clark v. City of Atlanta,* 544 Fed.Appx. 848, 852 (11th Cir.2013).  Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Lee*, 284 F.3d at 1194.  The court must apply a two-part test to determine whether qualified immunity is appropriate: (1) whether the facts as alleged show that the officer's conduct violated a constitutional right; and (2) whether such a right was clearly established at the time of the violation. *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  The courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

In this case, it is undisputed that the alleged retaliatory and false arrest occurred while Officer Harris was acting within the scope of his discretionary authority, as he was performing his official duties as a police officer on patrol for the City of Boynton Beach in conducting a traffic stop and making an arrest. *Burnett v. Unified Gov't of Athens-Clarke Cty..*, 395 F. App'x 567, 568 (11th Cir. 2010)(finding police officer who arrested plaintiff during traffic stop was acting within discretionary authority as "[t]he official responsibilities of a police officer on patrol include making traffic stops and arresting people. . . ."). Accordingly, Plaintiff bears the burden of demonstrating that qualified immunity is not appropriate, which Plaintiff cannot establish for the reasons set forth below.

I.   **SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF OFFICER HARRIS ON PLAINTIFF'S § 1983 CLAIMS**

In Count I of the Complaint, Plaintiff alleges that Officer Harris arrested Plaintiff in retaliation for his speech in violation of his First Amendment rights. [DE 1] at ¶ 29-33.  In Count II of the Complaint, Plaintiff alleges that Officer Harris arrested him in the absence of

probable cause, in violation of his Fourth Amendment rights. [DE 1] at ¶ 34-38. As explained below, Officer Harris had probable cause, or at minimum, arguable probable cause to arrest Plaintiff, which entitles Officer Harris to qualified immunity as to Plaintiff's claims for retaliatory arrest and false arrest as a matter of law.

### A. Legal standard for qualified immunity in false arrest claims

A warrantless arrest without probable cause violates the Fourth Amendment and provides a basis for a section 1983 action; thus, the existence of probable cause is an absolute bar to a section 1983 action for false arrest. *Marx v. Gumbinner*, 905 F.2d 1503, 1505–06 (11th Cir. 1990). In a section 1983 claim for false arrest, the plaintiff has the burden of demonstrating the complete absence of probable cause for the alleged false arrest. *See Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998).

Probable cause exists when an arrest is "objectively reasonable under the totality of the circumstances." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). An officer "has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge . . . would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). The subjective intent of the officer is immaterial. *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). Probable cause "does not require convincing proof," and "need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee,* 284 F.3d at 1195.

With respect to qualified immunity, "officers who make an arrest without probable cause are still entitled to qualified immunity if there was arguable probable cause for the arrest." *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003)(internal quotations omitted).

"Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." *Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir.2004). Even a mistaken but reasonable observation is sufficient to establish arguable probable cause. *Draper v. Reynolds*, 369 F.3d 1270, 1282 (11th Cir. 2004)("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.").

> **B.   No constitutional violation occurred as Officer Harris had probable cause to arrest Plaintiff for obstruction or attempted obstruction**

In this case, Plaintiff was arrested for violating Florida Statute section 843.02, which provides, in relevant part, "Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . ." Fla. Stat. §843.02. Thus, per the Florida Supreme Court, to support a conviction for obstruction without violence, the State must prove: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009).

As to the first element, the Eleventh Circuit holds that an officer conducting a traffic stop is engaged in the lawful execution of a legal duty under section 843.02. *Davis v. Williams*, 451 F.3d 759, 764–65 (11th Cir. 2006). In this case, it is undisputed that, at the time of the Plaintiff's arrest, Officer Harris was in the process of conducting a traffic stop because he observed Valentine's vehicle traveling at an excessive rate of speed, and therefore, he was engaged in the lawful execution of a legal duty.[1]

---

[1] Plaintiff testified that he did not know the speed limit in the area where Valentine was driving, and also testified that he did not actually look at the speedometer to see how fast

Turning to the second element, that is, whether Plaintiff's actions constituted obstruction or resistance of Officer Harris' execution of the traffic stop, prior to 2009, the district courts of appeal in Florida held that typically, "physical conduct must accompany offensive words to support a charge of obstruction."  *Davis*, 451 F.3d 759, 765 (discussing Florida law, citations omitted).  However, even prior to 2009, Florida courts recognized that words alone may result in obstruction of justice under section 843.02 in certain circumstances; specifically, where the officer is engaged in the following activities: 1) serving process; 2) legally detaining a person; or 3) asking for assistance.  *Francis v. State,* 736 So.2d 97, 99 (Fla. 4th DCA 1999).  In this case, as a passenger in the vehicle stopped by Officer Harris, Plaintiff was being legally detained by Officer Harris at the time of the incident.  *Brendlin v. California*, 551 U.S. 249, 258 (2007)(Both the driver and the passengers in a vehicle stopped by law enforcement are "seized" under the Fourth Amendment); *Maryland v. Wilson,* 519 U.S. 408, 414-415(1997)(holding that during a traffic stop, an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk, as it is reasonable for passengers to

---

Valentine was driving.  *SMF* at ¶ 4.  Despite this, Plaintiff testified that he "know we wasn't speeding."  *Id*.  Plaintiff's testimony is insufficient to create a genuine issue of material fact, since even taking Plaintiff's version of the events as true and assuming that Officer Harris was mistaken in his observation as to the speed of Valentine's vehicle, a mistaken but reasonable observation is sufficient to establish the  requisite probable cause to make a traffic stop.  *See Draper*, 369 F.3d at 1276, 1282 (11th Cir. 2004) (affirming summary judgment for officer on qualified immunity grounds, finding the  plaintiff's testimony that his vehicle tag light was working did not directly contradict the  officer's position that the registration plate was not clearly legible from fifty feet away on the  night of the traffic stop and was insufficient to create a genuine issue of material fact as to  whether officer had probable cause to stop vehicle for traffic violation); *Manners v. Cannella*, No. 15-CV-62071, 2016 WL 6395369 (S.D. Fla. Oct. 25, 2016) (finding police officer had probable cause to make traffic stop where officer testified that the plaintiff failed to stop at a stop sign, and the plaintiff testified that  he did stop at the stop sign, as the officer's observation, even if  mistaken, was reasonable, and there was nothing to support Plaintiff's  allegations that the officer fabricated the basis for the traffic stop).  Similarly, in this case there is no evidence to create a factual issue surrounding the testimony of Officer Harris regarding the purpose for the traffic stop.

expect that a police officer at the scene of an investigation will not let people move around in ways that could jeopardize his safety).

However, in 2009, the Florida Supreme Court held that a defendant could obstruct or resist an officer under Florida Statute section 843.02 "by his words, conduct, *or* a combination thereof." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009). Notably, the Florida Supreme Court did not limit obstruction via words alone to the three circumstances enumerated in *Francis*. Thus, in *C.E.L.* the Florida Supreme Court recognized that words alone, conduct, or a combination thereof, could support a charge of obstruction. *State v. Legnosky*, 27 So. 3d 794, 797–98 (Fla. 2d DCA 2010)(citing C.E.L., noting, "The supreme court has indicated that there are circumstances when words alone are sufficient to support an obstruction charge.").

Further, Florida law also makes it a crime "not only to oppose or to obstruct a law officer in the execution of the officer's duty, but also to attempt to oppose or to obstruct the officer." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1558–59 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994); *see also* § 777.04, Fla. Stat. (1993); *see also Fields v. State,* 685 So. 2d 961, 961-62 (Fla. 4th DCA 1996) (conviction of defendant for attempting to resist arrest without violence affirmed). Neither obstruction nor attempted obstruction "require violence or the offer to do violence." *Post*, 7 F.3d at 1559.

Florida courts have upheld criminal convictions against defendants for violating section 843.02 for obstructing officers with words and disobedient conduct, even in the absence of the use of threatening language or conduct like clenching fists that the Plaintiff exhibited in this case. For example, in *H.A.P. v. State*, 834 So. 2d 237, 238–39 (Fla. 3d DCA 2002), a criminal conviction was affirmed where the defendant, a bystander, yelled at law enforcement officers and refused to leave an area where officers were attempting to execute a search warrant after

being ordered to do so by officers.  In *Wilkerson v. State,* 556 So.2d 453 (Fla. 1st DCA), *review denied,* 564 So.2d 1088 (Fla.1990), section 843.02 was deemed constitutional and a criminal conviction was affirmed where the defendant yelled profanities at deputy sheriffs who were attempting to arrest other individuals for selling narcotics and refused to leave the area when ordered to do so, finding that the defendants yelling and physical presence at the scene obstructed or impeded the officer from doing his duty.

However, in this case, it does not need to be established that Plaintiff actually obstructed Officer Harris in his traffic stop investigation, as necessary in order to sustain a criminal conviction.  Officer Harris would have probable cause to arrest Plaintiff  "if the facts and circumstances within [his] knowledge . . . would cause a prudent person to believe, under the circumstances shown, that [plaintiff] has committed, is committing, or is about to commit" the offenses of obstruction or attempted obstruction.  *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990).  In *Greene v. City of Sunrise*, 323 So. 2d 30-31 (Fla. 4th DCA 1975), a Florida appellate court affirmed a jury verdict entered in favor of a police officer in a false arrest claim brought after the officer arrested the plaintiff for violation of section 843.02.  There, the court noted that the plaintiff interfered with and obstructed the officer by "harassing and threatening the officer" as he was engaged in issuing a traffic citation to a traffic violator.  *Id.*

Here, given the totality of the circumstances, Officer Harris had probable cause to arrest Plaintiff as a reasonable officer would conclude that Plaintiff had committed, was committing, or was about to commit obstruction of the traffic stop investigation.  Officer Harris stopped the vehicle Plaintiff was a passenger in for excessive speed in the dark in a residential area known to be a high crime and drug area, on a street which he knew from experience to be a main route for drug trafficking, given its proximity to the interstate.  *SMF* at ¶ 5, 6, 10.  Upon stopping the

vehicle, the driver, Valentine, jumped out as the officers approached and repeatedly questioned the officers as to why she was pulled over, despite instructions for her to sit down.  *SMF* at ¶ 11, 12.  Officer Harris testified that Valentine jumping out of the vehicle immediately raised a "red flag" and aroused his suspicions, particularly given the fact that the neighborhood was a high crime and drug area, as in his experience, a driver exiting a vehicle immediately during a traffic stop indicates that the driver may have a reason to want to separate themselves from the possession of the vehicle or to get away from a person inside of the vehicle.  *SMF* at ¶ 13.  Officer Harris testified that he was conducting an investigation into Valentine's excessive speed, why she jumped out of the vehicle immediately, and whether there was a potential domestic dispute occurring.  *SMF* at ¶ 14.  Valentine continued to question the officers outside the vehicle as to why she was pulled over, despite being told by an officer to have a seat, and got "aggravated" and "frustrated," and Plaintiff heard her getting "louder, and louder."  *SMF* at ¶ 16-18.

At that point, while Officer Harris was conducting his investigation, Plaintiff, a former football player and "rather large guy," began speaking from inside of the vehicle, and stated, in a loud voice, "Man you are not going to talk to her like that; you AIN'T going to talk to her."  *SMF* at ¶ 20-24.  As he made the statement, Plaintiff opened the door of the vehicle.  *SMF* at ¶ 23.  Despite instructions to "relax,"[2] Plaintiff continued to yell and interrupt Officer Harris from the passenger seat of the vehicle while clenching his fists and rubbing his head.  *SMF* at ¶ 25.  Despite both his girlfriend, Valentine, and the officers, attempting to calm Plaintiff down,

---

[2] Valentine's testimony differs slightly from Officer Harris, in that she testified that Officer Harris repeatedly told Plaintiff to to "shut the [expletive] up" in response to Plaintiff's comments.  Regardless of the specific language used, Valentine supports Officer Harris' testimony in that she establishes that Plaintiff was told to be quiet, but failed to do so and continued to loudly speak at Officer Harris.

Plaintiff persisted in being aggressive towards the officers. *SMF* at ¶ 26-30. Due to the actions of Plaintiff, including opening the door of the vehicle, clenching his fists, and yelling, Officer Harris' attention was diverted from Valentine, who was outside of the vehicle, to Plaintiff. *SMF* at ¶ 31. Officer Harris became fearful that Plaintiff was about to become violent, given that he observed Plaintiff open the door to the vehicle, clenching his fists, and yelling at him that "you're not going to talk to her like that" in a threatening manner, and ordered Plaintiff to step out of the vehicle. *SMF* at ¶ 32. Outside of the vehicle, Plaintiff continued speaking loudly at Officer Harris and clenching his fists. *SMF* at ¶ 34. Given his repeated disobedience of his commands, displays of aggression via clenched fists, and continued yelling and interruption, all of which hindered the traffic stop investigation, Officer Harris placed Plaintiff under arrest for obstruction due to Plaintiff's interference in the traffic stop investigation of Valentine. *SMF* at ¶ 35.

Most tellingly, Plaintiff's girlfriend, Valentine, testified that the verbal exchange between Plaintiff and Officer Harris inside the vehicle lasted three to four minutes, with the traffic stop ongoing for ten to twenty minutes before Officer Harris ordered Plaintiff to step outside the vehicle, and outside the vehicle, another ten to twenty minutes elapsed before Plaintiff was placed under arrest. *SMF* at ¶ 27, 33. Valentine testified that from the time until the vehicle was pulled over until Plaintiff was arrested, thirty to forty minutes elapsed. *SMF* at ¶ 37. Valentine's testimony as to the duration of the exchange between Plaintiff and Officer Harris demonstrates that this was not a situation wherein Plaintiff made one or two comments to Officer Harris; rather, as Officer Harris testified, Plaintiff's repeated conduct and actions impeded and obstructed Officer Harris' ability to conduct the traffic stop investigation.

Based upon these facts, Officer Harris had probable cause to believe that Plaintiff, by his conduct, and not merely his words, had committed, was committing, or was about to commit obstruction of the traffic stop investigation. While the Plaintiff was loudly talking to and interrupting Officer Harris as he attempted to conduct the traffic stop investigation, Officer Harris observed Plaintiff, a large male, open the passenger door of the vehicle and clenching his fists. Plaintiff's actions and conduct in clenching his fists and opening the vehicle door, coupled with his threatening speech, "You ain't going to talk to her," made Officer Harris fearful for his safety, and diverted his attention from Valentine and the traffic stop investigation, constituting obstruction.

The existence of probable cause to arrest Plaintiff for obstruction also defeats Plaintiff's claim that he was arrested in retaliation for his speech in violation of his First Amendment rights as a matter of law. *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002)("Whatever the officers' motivation [to arrest plaintiff], however, the existence of probable cause to arrest [plaintiff] defeats her First Amendment [Retaliatory Arrest] claim").

### C. Even if probable cause did not exist, at minimum, Officer Harris had arguable probable cause to arrest Plaintiff and is therefore entitled to qualified immunity as to Plaintiff's Fourth Amendment and First Amendment claims

Even assuming, *arguendo*, that Officer Harris did not have probable cause to arrest Plaintiff for obstruction or attempted obstruction, he still is entitled to qualified immunity as he had arguable probable cause to arrest Plaintiff. "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." *Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir.2004). Phrased another way, "[T]he issue material to qualified immunity is whether a reasonable officer in [Officer Harris'] place could have thought the facts were such that he could

reasonably conclude that Plaintiff was committing, or was about to attempt, acts of obstruction or resistance." *Post*, 7 F.3d at 1559, n. 8.  In *Post*, the Eleventh Circuit held that a police officer who arrested a bar owner for obstruction in violation of section 843.02 while attempting to determine whether the bar had code violations due to over-capacity was entitled to qualified immunity on the bar owner's false arrest § 1983 claim.  Specifically, the court held that the officer had arguable probable cause to arrest the bar owner for obstruction given that the bar owner made repeated comment in violation of the officer's orders to remain quiet and the bar owner raised his hands, which the court found could have constituted obstruction or resisting arrest. *Id.*

In this case, as in *Post*, Officer Harris had arguable probable cause to arrest the Plaintiff for obstruction of the traffic stop investigation, as a reasonable officer in his position *could* have reasonably concluded that Plaintiff, via his actions in opening the vehicle door, clenching his fists, and yelling at and interrupting Officer Harris after being told to cease doing so for a period of three to four minutes inside the vehicle and ten to twenty minutes outside the vehicle, while Officer Harris was in the process of conducting a traffic stop, obstructed or impeded Officer Harris in being able to carry out his duties of performing the traffic stop investigation.

This case is readily distinguishable from *Davis v. Williams*, 451 F.3d 759, 764–65 (11th Cir. 2006), where the Eleventh Circuit reversed summary judgment on a false arrest claim entered in favor of the officer who arrested the plaintiff for obstruction in violation of section 843.02, finding that the officer was not entitled to qualified immunity as he did not have arguable probable cause.  In *Davis*, the plaintiff, a homeowner, noticed flashing police lights outside his home, went outside, and approached two officers conducting a traffic stop of a vehicle.  The plaintiff advised the officers he was the homeowner and asked what the problem was, and was

told to leave by the officers. He then asked one of the officers if he could direct traffic to avoid the potential for vehicles to drive into an unlit lake on the property as the officers' vehicle was blocking the road, was again ordered to leave, and then asked for the officer's badge number as her turned and walked back to his house, at which point, he was arrested. The plaintiff never came within 45 feet of the officers, and one of the officers testified that he never considered plaintiff a threat to himself or the other officer.

There are numerous distinguishing features between *Davis* and the instant case. Here, unlike in *Davis*: 1) the Plaintiff was under legal detention by the officers as a passenger in the vehicle during the duration of the traffic stop; 2) Plaintiff used aggressive language towards Officer Harris (loudly stating, "You ain't going to talk to her like that) and continually yelled at and interrupted him after being told to stop; 3) Plaintiff clenched his fists and opened the door to the vehicle, diverting Officer Harris' attention from the traffic stop investigation of Valentine to the Plaintiff due to his concern that violence was imminent; 4) Officer Harris and Valentine both attempted to calm the Plaintiff down before his arrest, to no avail; and 5) the traffic stop was thirty to forty-five minutes in duration from the time the vehicle was pulled over until the time Plaintiff was arrested, with exchanges between the Plaintiff and Harris lasting three to four minutes inside the vehicle and another ten minutes outside the vehicle. *SMF* at ¶ 1-37.

Again, because Officer Harris had arguable probable cause to arrest Plaintiff for obstruction, he is also entitled to qualified immunity as to the Plaintiff's First Amendment retaliatory arrest claim. *Redd v. City of Enter.*, 140 F.3d 1378, 1383–84 (11th Cir. 1998)("[B]ecause we hold that the officer had probable cause to arrest [plaintiff] for disorderly conduct, we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims.").

> **D. Additional grounds support summary judgment in favor of Officer Harris as to Plaintiff's First Amendment retaliatory arrest claim**

In addition to being entitled to summary judgment as there was probable cause, or arguable probable cause to arrest Plaintiff for obstruction, summary judgment should also be granted in favor of Officer Harris as to Plaintiff's First Amendment retaliatory arrest claim because there is no evidence to support that Officer Harris arrested Plaintiff because of the content of his speech, an essential element to Plaintiff's claim.

"To state a First Amendment retaliation claim, a plaintiff must establish "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Lawson v. City of Miami Beach,* 908 F. Supp. 2d 1285, 1291 (S.D. Fla. 2012)(dismissing first amendment retaliation claim, finding plaintiff failed to establish causal connection between his arrest and comment made to arresting officer that he went to law school with President Obama, despite allegation that officer responded, "[Expletive] Obama, see if he can help you now," before making arrest) (quoting *Bennett v. Hendrix,* 423 F.3d 1247, 1250 (11th Cir.2005)). To establish this final requirement of a causal connection, "the plaintiff must allege that the protected conduct was the 'motivating factor behind the defendants' actions." ' *Abella v. Simon,* 482 Fed.Appx. 522, 523 (11th Cir.2012) (quoting *Smith v. Mosley,* 532 F.3d 1270, 1278 (11th Cir.2008)).

With respect to the causal-connection element, courts apply a burden-shifting test as follows:

> "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on [his motion for judgment as a matter of law or prior to trial on] summary judgment." *Smith,* 532 F. 3d at 1278; *see generally Mt.*

*Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In this case, it is clear from Officer Harris' testimony that he arrested Plaintiff for obstruction not because of the content of his speech, but because of his actions, including opening the door to the vehicle, clenching his fists, and yelling and interrupting, all of which diverted Officer Harris' attention from his traffic stop investigation of Valentine and hindered him in performing his duties. *SMF* at ¶ 35.  Indeed, Officer Harris testified that he "had no problem" with Plaintiff's comments which were critical, including his statement that Officer Harris was "hiding behind his badge."  *SMF* at ¶ 36.  For this reason, Plaintiff cannot establish that the content of his speech was the motivating factor behind his arrest, and thus, Officer Harris is entitled to summary judgment as to Plaintiff's First Amendment retaliation claim.

**II.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF OFFICER HARRIS AS TO PLAINTIFF'S STATE LAW FALSE ARREST CLAIM**

Foremost, summary judgment should also be granted to Officer Harris as to Plaintiff's state law false arrest claim as probable cause existed for the arrest of Plaintiff for the reasons set forth above.  *See Mas v. Metropolitan Dade County*, 775 So. 2d 1010, 1011 (Fla 3rd DCA 2001)(affirming summary judgment in favor of county on state law claim for false arrest and false imprisonment, as officers had probable cause to arrest plaintiff).   However, even if this Court were to find that an issue of fact precludes summary judgment as to whether Officer Harris had probable cause to arrest Plaintiff, summary judgment still must be granted to Officer Harris as to Plaintiff's state law false arrest claim as he is entitled to immunity pursuant to Florida Statute section 768.28(9).

Florida Statute section 768.28(9) provides, in relevant part:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort ... for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. ... The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by an action against the governmental entity. . . of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.  Fla. Stat. § 768.28(9).

"Importantly, the immunity provided by section 768.28(9)(a) is both an immunity from liability *and* an immunity from suit, and the benefit of this immunity is effectively lost if the person entitled to assert it is required to go to trial." *Willingham v. City of Orlando*, 929 So. 2d 43, 47–48 (Fla. 5th DCA 2006).  Even in state law false arrest cases where courts find that an issue of fact precludes summary judgment as to whether the officer had probable cause to arrest the plaintiff, courts must nevertheless grant summary judgment in favor of the officer under section 768.28(9) where no reasonable trier of fact could conclude from the evidence that the officer acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Moore v. Seminole County, Fla.*, 6:13-CV-224-ORL-31GJ, 2014 WL 4278744, at *6 (M.D. Fla. Aug. 29, 2014), *aff'd sub nom. Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015)(granting summary judgment in favor of police officer on state law false arrest claim, finding officer was immune from suit pursuant to section 768.28(9) as there was no evidence that officer acted in bad faith or malicious purpose).  The trial court "must act as a gatekeeper ... and should terminate civil proceedings when the immunity applies."  *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277 (Fla. 4th DCA 2011)

Here, the undisputed evidence establishes that Officer Harris was an on-duty police officer in the course and scope of his employment on a routine road patrol, when he made a

traffic stop after he observed a vehicle traveling with excessive speed in a residential area. *SMF* at ¶ 6-8. Officer Harris testified that he arrested Plaintiff after Plaintiff's actions interfered with and obstructed Officer Harris in performing the traffic stop investigation. *SMF* at ¶ 35. There is no evidence that Officer Harris was outside of the course and scope of his employment or acted in bad faith or with malicious purpose when arresting Plaintiff. The Complaint is devoid of any claim that Officer Harris used excessive or unreasonable force against Plaintiff. Officer Harris arrested Plaintiff, but released him with a notice to appear, which belies any contention that his behavior was malicious or in bad faith. *SMF* at ¶ 39.

Accordingly, summary judgment must be granted in favor of Officer Harris as to Plaintiff's state law false arrest claim.

WHEREFORE, Defendant, JUSTIN HARRIS, respectfully requests this Court to enter an order granting summary judgment as to all claims asserted against him, specifically Counts I, II, and IV of the Complaint, and awarding this Defendant costs and such other relief as this Court deems just and proper.

Dated: 29th September, 2017.

    Respectfully submitted,

    **ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
    Counsel for Officer Harris
    470 Columbia Drive, Bldg 101C
    West Palm Beach, FL  33409
    PHONE:     561 688-6560
    FAX:            561 688-2343
    EMAIL:        bbedard@rrbpa.com

    By: */S/ Benjamin L. Bedard*
        **BENJAMIN L. BEDARD**
        FBN: 983772
        **DANNA P. CLEMENT**
        FBN:  338310

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY 29th day September, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/EFC.  I also certify that the foregoing document is being served this day to Hugh L. Koerner, Esq., *Counsel for Plaintiff*, 3475 Sheridan St, Ste 208, Hollywood, FL  33021, hlklaw@hughkoerner.com , and Tracey A. DeCarlo, Esq., *Counsel for City of Boynton Beach*, 3099 E. Commercial Blvd, Suite 200, Ft Lauderdale, FL  33308, tdecarlo@cityatty.com;  smaldonado@cityatty.com;  cdunn@cityatty.com, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

          ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC
          470 Columbia Drive, Bldg. C101
          West Palm Beach, FL  33409
          Phone: 561/688-6560     Fax: 561/688-2343
          Email: bbedard@rrbpa.com; dclement@rrbpa.com
          Attorneys for Officer Harris

          */S/ Benjamin L. Bedard*_____
          **BENJAMIN L. BEDARD**
          Florida Bar No: 983772
          **DANNA P. CLEMENT**
          Florida Bar No: 338310