UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81572-CIV-MARRA/MATTHEWMAN

BENNIE ROBINSON,

    Plaintiff,
vs.

CITY OF BOYNTON BEACH,
a Florida municipal corporation,
and JUSTIN HARRIS, individually,

    Defendants.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant's, City of Boynton Beach, Motion for Summary Judgment [DE 25], and Defendant's, Justin Harris, Motion for Summary Judgment [DE 27]. The motions are fully briefed and ripe for review. The Court has carefully considered the motions, responses, replies, entire court record, and is otherwise fully advised in the premises.

## INTRODUCTION

This matter arises from a traffic stop and the ensuing encounter with the adult occupants of the car and the police. Plaintiff, Bennie Robinson ("Robinson"), was arrested and his Complaint includes four claims. Count I seeks relief under 42 U.S.C. § 1983 against police officer Justin Harris, ("Harris") individually, for retaliation against protected speech under the First Amendment. Count II seeks relief against Harris, individually, for false arrest under the Fourth Amendment and 42 U.S.C. §

1983.  Count III seeks relief against the City of Boynton Beach for false arrest/false imprisonment under Florida law.  Count IV seeks relief in the alternative against Harris, individually, for false arrest/false imprisonment under Florida law.  Defendants move for summary judgment as to all counts.  The only evidence presented in this case in support of the motions and opposition memoranda are the deposition testimony of Robinson, his girlfriend Shayla Valentine ("Valentine"), Harris, and the police report drafted by Harris.

## STANDARDS FOR EVALUATING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Id*. at 324.

The objective nature of qualified immunity defines what fact issues are material for summary judgment purposes.  To avoid summary judgment it is not enough for a plaintiff to produce evidence, which — if believed (for summary judgment its truth is assumed) — would allow a fact-finder to find just that the government-agent defendant was, in reality, wrong about the facts on which the defendant acted.  Instead, to defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.  *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993); see *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1234-35 (11th Cir. 1992) (illustrating what kinds of fact issues are material to qualified immunity).

As the Eleventh Circuit "has repeatedly stressed, the 'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'"  *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir.  2002) quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).  Most of the facts giving rise to this case are hotly disputed, and the only evidence presented is Robinson's, Valentine's, and Harris' testimony.  Nevertheless, for summary judgment purposes, it is incumbent upon the Court to view the facts in the light most favorable to Robinson.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002).

**UNDISPUTED MATERIAL FACTS**[1]

1. The parties agree that on the evening of August 11, 2013, Robinson and Valentine were driving Valentine's godson, nephew, and a third child from football practice to a residence located at 809 Northwest 4th Street in Boynton Beach, Florida at approximately 7:30 p.m.  DE 28, Ex. 1 at 10-11, 12-16. Valentine was driving her vehicle, a Dodge Charger; Robinson was in the front passenger seat, and the three children were in the back.  *Id*. at 19.

2. At the time, the sun had started to set, and it was starting to get dark.  *Id*. at 19.

3. Harris was stopped at a stop sign on 9th Avenue at the intersection of Northwest 4th Street in his marked police vehicle.  Officer Steven Mills ("Mills") was in the police vehicle with Harris.  DE 28-4.

4. Because this was a "high crime" and "high drug" neighborhood, the officers were performing "selective enforcement," - *i.e.*, watching to see if anyone committed a traffic infraction, such as speeding, or running a stop sign.  If so, they would stop the car to enforce the laws to make their police presence known.  DE 26-1 at 11-12; DE 28-3 at 22-23.

---

[1] Both defendants have submitted "Statements of Material Facts."  *See* DE 26 and DE 28.  Where the statements are undisputed, they are recited above.  In most incidents, since the majority of material facts are disputed, Robinson's version of the facts is considered by the Court in deciding the instant motions.

5. Harris was acting at all times relevant to this case within the scope of his discretionary authority.

6. Harris testified that he observed Valentine's vehicle speeding through the residential area at what he visually estimated to be approximately 45 miles per hour.[2]  DE 28-3 at 24-25, DE 28-5.  No traffic citation was ever issued for speeding or other traffic infraction.  DE 26-3 at 43.  Robinson and Valentine vehemently deny that she was speeding and claim she was traveling 20 or 25 miles per hour, although neither one could attest to exactly what speed she was traveling.

7. The officers activated the lights on the police vehicle.  DE 28-4.  Valentine turned onto the street where the residence was located from Martin Luther King Boulevard.

---

[2] "It is well established in Florida that a vehicle may be stopped for a speeding violation based on an officer's visual observations. Accordingly, actual speed need not be verified by the use of radar equipment or clocking. *See Young v. State*, 33 So.3d 151, 153 (Fla. Dist. Ct. App. 2010) (holding that officer's trained observation of defendant's speeding sufficed to provide probable cause for the stop); *Allen*, 978 So.2d at 255–56 (concluding that trial court erred in finding that there must be evidence of vehicle's actual speed to provide probable cause to stop vehicle; officer may stop vehicle for speeding violation based on officer's visual perceptions; verification of actual speed by use of radar equipment or clocking not necessary to justify stop); *State v. Joy*, 637 So.2d 946, 947 (Fla. Dist. Ct. App. 1994) ("The fact that the patrol car's speedometer was not calibrated is of no moment because an officer may stop a vehicle suspected of speeding based on the officer's visual and aural perceptions."); *State v. Eady*, 538 So.2d 96, 97 (Fla. Dist. Ct. App. 1989) (holding that where officer observed defendant driving at "a high rate of speed" and "heard a tire screeching and like a passing gear kicking in," officer had reasonable suspicion of speeding violation)." *Gallardo v. State*, 204 So.3d 979, 980 (Fla. Dist. Ct. App. 2016).

8. Valentine observed the lights as she was preparing to turn into the driveway of the residence at 809 Northwest 4th Street to drop the children off. DE 28-1 at 18.

9. Valentine pulled into the driveway of the residence and stopped the vehicle. DE 28-1 at 19-20.

10. According to the Complaint, and Valentine's and Robinson's depositions: Mills immediately approached the driver's side of the Dodge Charger with his firearm displayed. Mills ordered Valentine to open the driver's side window of the vehicle and Valentine complied. Compl. ¶ 14; DE 28-1 at 20-21. Mills then pulled open the door of the vehicle and directed Valentine to exit. Valentine complied. Compl. ¶ 15. While standing outside the vehicle, Valentine questioned Mills concerning the basis for the stop (as Mills continued to hold Valentine at gunpoint). Compl. ¶ 16. When Valentine questioned Mills again, Mills became verbally aggressive, saying in a loud and forceful manner "just shut up," "shut the fuck up." Compl. ¶ 17; DE 28-1 at 21, 28, DE 28-2 at 68-69, 77, DE 28-4. When Mills became verbally aggressive with Valentine, Robinson stated to Mills (from the front passenger's seat): "Why are you talking to her like that. You don't have to talk to her like that." Compl. ¶ 18. Robinson then heard a knock on the front [passenger's] side window of the car. Compl. ¶ 19. Robinson looked to his right and observed Harris, who ordered Plaintiff at gunpoint to exit the Dodge Charger and place his hands on the roof of the

vehicle, stating: "I should shoot you in your fucking head." Compl. ¶ 20. With his hands on the roof of the car, Robinson looked back and observed Harris' gun pointed at his face. Compl. ¶ 21. Robinson stated to Harris: "If you are going to shoot me, shoot me. I didn't do anything." Compl. ¶ 22. Harris then ordered Robinson to place his hands behind his back, whereupon Robinson was handcuffed and placed under arrest by Harris for the offense obstruction of justice in the absence of probable cause that Robinson committed any criminal offense.[3] Compl. ¶ 23.

## DISCUSSION

### Federal Claims

Harris moves for summary judgment as to Robinson's 42 U.S.C. § 1983 claims for retaliatory arrest and false arrest asserting he is entitled to qualified immunity

---

[3] According to Harris' police report, Valentine exited the vehicle on her own volition as the officers approached her car and yelled again and again, "Man why did you pull us! Why did you pull us!" Then, according to Harris, in response to the officers ordering Valentine to sit in the vehicle, Robinson stated, "man you are not going to talk to her like that, you AIN'T going to talk to her!", and then opened the passenger door (but remained in the car). Harris claimed he perceived Robinson was agitated because he was rubbing his head and clinching his fists. Robinson was arrested for resisting arrest without violence. DE 28-4. Robinson denies that he acted in a manner that would cause a reasonable officer to fear that he would become violent. Robinson denies that he: made fists or any gestures with his hands, that he opened the car door on his own volition, or that he used the language in Harris' police report. DE 28-2 at 78-79. In deciding claims of qualified immunity, the Court accepts Robinson's version of the facts. *See Lee v. Ferraro*, 284 F.3d 1188, 1190, 1194 (11th Cir. 2002). Therefore, this account is presented for context only, but is not considered in the Court's analysis.

because he had probable cause, or at a minimum, arguable probable cause, to arrest Robinson.

A government official faced with a civil rights claim brought pursuant to 42 U.S.C. § 1983 is entitled to raise the affirmative defense of qualified immunity. Qualified immunity generally shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("*Mitchell*"); *see also Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002); *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (*per curiam*).  It "follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct" that this defense is "conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." *Mitchell*, 472 U.S. at 527-28.

Entitlement to qualified immunity is for the court to decide as a matter of law. *Cottrell v. Caldwell*, 85 F.3d 1480, 1488 (11th Cir. 1996) ("Qualified immunity is a legal issue to be decided by the court...."); *Stone v. Peacock,* 968 F.2d 1163, 1166 (11th Cir. 1992) ("The law is now clear ... that the defense of qualified immunity should be decided by the court, and should not be submitted for decision by the

jury."); *Hudgins v. City of Ashburn,* 890 F.2d 396, 403 (11th Cir. 1989) ("[T]he availability of qualified immunity necessarily is a question of law.")

The Supreme Court has held that qualified immunity analysis involves two discrete queries.  First, the Court must decide whether the facts alleged, assuming they are true, demonstrate that the defendants violated a constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If this is answered in the affirmative, the Court proceeds to the second query, which is to determine whether the right violated was clearly established.  *See id.*[4]  If a government official moves for summary judgment asserting entitlement to qualified immunity, then the relevant facts are construed in the light most favorable to the non-movant—*i.e.*, the plaintiff—and the court should decide the issue based on those facts.  *See Mitchell*, 472 U.S. at 526.

As to the first inquiry, Robinson has alleged that during a traffic stop, when he protested about how Wills was speaking to Valentine, Harris put a gun to his head, threatened to kill him, and arrested him in retaliation for his verbally defending his girlfriend in the exercise of his free speech (Count I), and, in addition, falsely

---

[4] *But note, Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

arrested[5] him in the absence of probable cause that he committed any criminal offense (Count II). Taking Robinson's version of the facts, a jury could find that being held at gun point and arrested under these circumstances would deter a person of ordinary firmness from the exercise of his First Amendment right to be free from retaliatory arrest for speech (a First Amendment violation), and a jury could find there was no probable cause to arrest Robinson in violation of his right to be free from an unreasonable seizure under the Fourth Amendment.  *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005); *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003).  Since Robinson has presented evidence sufficient to make out violations of his First and Fourth Amendment rights, the first inquiry is answered in the affirmative. As to the second inquiry, there can be no debate the First and Fourth Amendment rights allegedly violated on the evening of August 11, 2013 were clearly established. Accordingly, the Court concludes that Harris is not entitled to qualified immunity on the retaliatory arrest and false arrest claims.

Harris argues, however, that he is entitled to qualified immunity based on the

---

[5] An individual has a constitutional right to be free from "unreasonable searches and seizures". U.S. Const. amend. IV. An arrest qualifies as a seizure of a person. *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir.2009) (citations omitted). The reasonableness of an arrest depends on whether probable cause existed to make the arrest. *Id*. at 1326. An arrest without probable cause violates the Constitution and provides a basis for a §1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted).

fact that he had at least *arguable probable cause* to arrest Robinson, *i.e.*, that a reasonable police officer, knowing what Harris knew, could have believed there was probable cause for Robinson's arrest.  *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999).  However, this argument is once again based Defendants' version of the disputed facts rather than Robinson's, which is improper.

Where the facts are undisputed, whether probable cause existed is purely a question of law.  *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990); *Moore v. Seminole County,* Fla., 2014 WL 4278744, at *3 (M.D. Fla. 2014).  When material facts are in controversy, however, the question of whether probable cause existed is a jury issue.  *Glass v. Parrish*, 51 So.2d 717 (Fla. 1951); *see also City of Pensacola v. Owens*, 369 So.2d 328 (Fla. 1979); *Gause v. First Bank of Marianna*, 457 So.2d 582 (Fla. Dist. Ct. App. 1984); *City of Hialeah v. Rehm*, 455 So.2d 458 (Fla. Dist. Ct. App. 1984), *pet. for rev. den.*, 462 So.2d 1107 (Fla. 1985); *Carson v. Brookshire*, 440 So.2d 614 (Fla. Dist. Ct. App. 1983); *Weissman v. K-Mart Corp.*, 396 So.2d 1164 (Fla. Dist. Ct. App. 1971).

In this case, all material facts are disputed.  For example, whether Valentine stayed in her car until instructed to exit, or if she jumped out as soon as she pulled into her driveway; what words Robinson said to Wills and how he expressed himself; whether Robinson clenched his fists; whether Robinson opened the car door on his own volition; what words the officers said to Robinson and Valentine, the duration of the stop, and more.  These facts are material to the jury's determination of probable

cause for the arrest.  *LeGrand v. Dean*, 564 So.2d 510, 512 (Fla. Dist. Ct. App.  1990)

Robinson was arrested for violating Florida Statute § 843.02, which provides, in relevant part, "Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . ."  Fla. Stat. § 843.02.  Thus, per the Florida Supreme Court, to support a conviction for obstruction without violence, the State must prove: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So.3d 1181, 1185-86 (Fla. 2009).

While Robinson asserts that the stop was unlawful because Valentine was not speeding, Florida law provides that an officer may stop a vehicle for speeding based on the officer's own visual perceptions.  Hence, the Court finds that Harris was engaged in the lawful execution of a legal duty when he conducted a traffic stop because he visually perceived Valentine to be traveling at an excessive speed.  *See*, footnote 1 *supra*; *Davis v. Williams*, 451 F.3d 759, 764-65 (11th Cir. 2006); *DeRosa v. Rambosk*, 732 F. Supp. 2d 1285, 1297 (M.D. Fla. 2010); DE 28-3 at 24-25, DE 28-5.

Turning to the second element, Davis stated that "Florida courts have generally held, "with very limited exceptions, ... physical conduct must accompany offensive words to support a conviction under § 843.02," noting that Florida law held that "[w]ords alone may result in obstruction of justice where the officer in question

is 1) serving process; 2) legally detaining a person; or 3) asking for assistance." *Yessin v. City of Tampa, Florida,* 613 F.App'x 906, 907 (11th Cir. 2015) citing *Davis v. Williams*, 451 F.3d 759, 765 (11th Cir. 2006) (citations omitted); *C.E.L. v. State*, 24 So.3d 1181, 1185-86 (Fla. 2009) (words alone, conduct, or a combination thereof, could support charge of obstruction).  Thus, while words alone may satisfy the statute, the issue is whether the words in this case arguably did so.

Even though it appears that Robinson was being legally detained by the traffic stop, the facts of this case, taken in the light most favorable to Robinson, do not support, as a matter of law, a finding of probable cause for obstruction without violence.  *See* Undisputed Material Facts, ¶ 10; *Davis*, 451 F.3d at 765–66; see also, *DeRosa v. Rambosk*, 732 F. Supp. 2d 1285, 1297–98 (M.D. Fla. 2010) (holding that no probable cause to arrest for resisting without violence existed because it is not "unlawful for a person to talk during [a] traffic stop" and rejecting that an officer had the right to maintain unquestioned command of the encounter); *J.G.D. v. State*, 724 So.2d 711, 711–12 (Fla. Dist. Ct. App. 1999) (holding police did not have probable cause to arrest defendant for obstruction despite defendant's "loud and profane" protests, and despite the gathering of an "unruly crowd"); *State v. Dennis*, 684 So.2d 848, 849 (Fla. Dist. Ct. App.  1996) (holding police did not have probable cause to arrest defendant for obstruction when defendant was yelling street term "ninety nine" which means police were in the area while undercover officers were attempting drug bust of drug dealer); *D.G. v. State*, 661 So.2d 75, 76 (Fla. Dist. Ct. App. 1995)

(finding juvenile's verbal protests and refusal to answer officer's questions, unaccompanied by physical opposition or threats, did not constitute obstruction). Robinson's protests, even if distracting, did not incite others against, interfere with, or impede Harris from citing Valentine for a traffic infraction, if he had chosen to do so. *DeRosa v. Sheriff of Collier County, Florida*, 416 F.App'x 839, 840 (11th Cir. 2011).

Although entitlement to qualified immunity presents a question of law, resolution of this question can sometimes turn on issues of fact. The Eleventh Circuit Court of Appeals has previously explained why and under what circumstances a defendant's entitlement to qualified immunity may remain unresolved even into the trial phase of litigation:

> Where it is not evident from the allegations of the complaint alone that the defendants are entitled to qualified immunity, the case will proceed to the summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation. Even at the summary judgment stage, not all defendants entitled to the protection of the qualified immunity defense will get it. The ones who should be given that protection at the summary judgment stage are those who establish that there is no genuine issue of material fact preventing them from being entitled to qualified immunity. And that will include defendants in a case where there is some dispute about the facts, but even viewing the evidence most favorably to the plaintiff the law applicable to that set of facts was not already clearly enough settled to make the defendants' conduct clearly unlawful. *But if the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial.*

*Johnson,* 280 F.3d at 1317 (emphasis added) (citation omitted); *see also Vaughan v. Cox,* 343 F.3d 1323, 1333 (11th Cir. 2003).

The facts of the instant case involve contested factual issues bearing on Defendant's entitlement to qualified immunity. Without further fact finding, it is impracticable to conclude that arguable probable cause did or did not exist for Robinson's arrest when it is completely unclear who's version of the encounter is true. On this highly disputed factual record, exactly this sort of factual, credibility-sensitive task is best left to the jury.[6] *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). If it were to credit Robinson's account of these events, a reasonable jury could find that no reasonable person in Harris' position could have thought the facts were such that they justified his acts.

Even though this Court has concluded that Harris is not entitled to qualified immunity on Robinson's retaliation against protected speech and false arrest claims at the summary judgment stage, Harris is not precluded from pursuing the qualified immunity defense at the trial. *See Vaughan v. Cox,* 343 F.3d 1323, 1333 (11th Cir. 2003). Should the jury choose not to credit (in whole or in part) Robinson's version of the facts, or should the facts not be presented at trial as alleged here on summary

---

[6] The question of what circumstances existed at the time of the encounter is a question of fact for the jury — but the question of whether the officer's perceptions and attendant actions were objectively reasonable under those circumstances is a question of law for the court. *Saucier v. Katz*, 533 U.S. 194, 206 (2001); *see also Harris v. Coweta Cty.*, 21 F.3d 388, 390 (11th Cir. 1994).

judgment, the qualified immunity analysis may change. *Simmons v. Bradshaw*, No. 14-80425, 2014 WL 11456548, at *8-9 (S.D. Fla. Dec. 31, 2014); *Simmons v. Bradshaw*, – F.3d –, 2018 WL 345324, at *3–8 (11th Cir. Jan. 10, 2018).

"Where the defendant's pretrial motions are denied because there are genuine issues of fact that are determinative of the qualified immunity issue, special jury interrogatories may be used to resolve those factual issues." *Cottrell*, 85 F.3d at 1487. As the Eleventh Circuit has said before:

> Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted. Denial of such a request would be error, because it would deprive the defendant who is forced to trial of his right to have the factual issues underlying his defense decided by the jury.
>
> We do not mean to imply, of course, that district courts should submit the issue of whether a defendant is entitled to qualified immunity to the jury. Qualified immunity is a legal issue to be decided by the court, and the jury interrogatories should not even mention the term. Instead, the jury interrogatories should be restricted to the who-what-when-where-why type of historical fact issues.
>
> When a district court has denied the qualified immunity defense prior to trial based upon its determination that the defense turns upon a genuine issue of material fact, the court should revisit that factual issue when, and if, the defendant files a timely Fed. R. Civ. P. 50(a) or (b) motion.

*Id*. at 1487-88 (citations omitted). Given the significance of the disputed issues of fact here, qualified immunity from suit is effectively unavailable, even though after a full trial Harris may yet prevail on the merits. Consequently, Robinson's suit as to Counts I and II against Harris may proceed.

### State Claims

### False Arrest against Harris (Count IV)

Harris asserts, beyond the arguments made above regarding probable cause existing for Robinson's arrest, that summary judgment still must be granted as to Robinson's state law false arrest claim because he is entitled to immunity pursuant to Fla. Stat. § 768.28(9) which provides, in relevant part:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort ... for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. ... The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by an action against the governmental entity. . . of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9).

"Importantly, the immunity provided by section 768.28(9)(a) is both an immunity from liability and an immunity from suit, and the benefit of this immunity is effectively lost if the person entitled to assert it is required to go to trial." *Willingham v. City of Orlando*, 929 So.2d 43, 47–48 (Fla. Dist. Ct. App. 2006). The trial court "must act as a gatekeeper ... and should terminate civil proceedings when

the immunity applies." *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277 (Fla. Dist. Ct. App. 2011).

Even in state law false arrest cases where courts find that an issue of fact precludes summary judgment as to whether the officer had probable cause to arrest the plaintiff, courts must nevertheless grant summary judgment in favor of the officer under section 768.28(9) where no reasonable trier of fact could conclude from the evidence that the officer acted "*in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.*" *Moore v. Seminole County, Fla.*, 6:13-CV-224-ORL-31GJ, 2014 WL 4278744, at *6 (M.D. Fla. Aug. 29, 2014) (emphasis added), *aff'd sub nom. Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015) (granting summary judgment in favor of police officer on state law false arrest claim, finding officer was immune from suit pursuant to § 768.28(9) as there was no evidence that officer acted in bad faith or malicious purpose).[7]

---

[7] "In *Willingham v. City of Orlando*, 929 So.2d 43, 47–48 (Fla. Dist. Ct. App. 2006), the Fifth District Court of Appeal of Florida held that, under § 768.28(9)(a), an Orlando police officer is not liable in tort and is entitled to summary judgment against a plaintiff's state tort law claims, unless a plaintiff can prove that the officer's conduct was in bad faith, exhibited malicious purpose, or exhibited wanton and willful disregard of human rights, safety, or property. In the context of § 768.28(9)(a), conduct committed in bad faith has been characterized as conduct acted out with actual malice. *Parker v. State Bd. of Regents ex rel. Florida State Univ.*, 724 So.2d 163, 167 (Fla. Dist. Ct. App. 1998). Conduct meeting the "wanton and willful" standard in the context of § 768.28(9)(a), must be "worse than gross negligence," *Sierra v. Associated Marine Insts., Inc.*, 850 So.2d 582, 593 (Fla. Dist. Ct. App. 2003), and "more reprehensible and unacceptable than mere intentional

Harris argues there is no evidence that he acted in bad faith or with malicious purpose when arresting Robinson.  He argues that because the Complaint does not assert that he used excessive or unreasonable force against Robinson, summary judgment must be granted in his favor as to this claim.  But he cites no case law and makes no analysis for this proposition.

While Robinson failes to address this argument in his opposition brief, the facts alleged in the Complaint support a claim for bad faith on the part of Harris.  Robinson alleges that all he did was protest without aggression.  But Harris pointed his gun at Robinson's head and said, "I should shoot you in your fucking head."  Undisputed Facts ¶ 10.  These allegations are sufficient to implicate the bad faith or malicious exception to statutory immunity.  *See, e.g., Evans, Jr. v. City of Edgewater, Fla.*, 2015 WL 4911415, at *2 (M.D. Fla. 2015) (allegations that there was no basis to believe he committed or was about to commit a crime but before he was placed under arrest, officers pointed their guns at him, instructed him to get on his knees, and pushed him against a police cruiser were found to be sufficient to implicate the bad faith exception to Fla. Stat. § 768.28(9)(a) immunity).  Viewing the facts in a light most favorable to Robinson as the non-moving party, a jury could reasonably find that Harris acted in bad faith.  *Callahan v. City of Hollywood,* 2015 WL 13638849,

---

conduct."  *Richardson v. City of Pompano Beach*, 511 So.2d 1121, 1123 (Fla. Dist. Ct. App. 1987)."  *Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1225 (M.D. Fla. 2011).

at *7 (S.D. Fla. 2015).  Accordingly, the Motion for Summary Judgement as to Count IV is denied.

**Claim Against the City of Boynton Beach**

Count III alleges a state law claim of false arrest/false imprisonment against the City of Boynton Beach.  The only argument the City makes is that summary judgment should be granted on this claim based on the affirmative defense of probable cause.  However, the City makes very similar arguments as those put forth by its co-defendant, likewise completely ignoring the standard of review - that the facts must be viewed in a light most favorable to the non-moving party - Robinson.  For the same reasons set forth above discussing Robinson's § 1983 false arrest claim against Harris, the City of Boynton Beach is not entitled to summary judgment on Robinson's state law claim of false arrest/false imprisonment.  According to the conclusions made herein, it is hereby

**ORDERED AND ADJUDGED** that Defendant City of Boynton Beach, Motion for Summary Judgment **[DE 25] is denied**, and Defendant's, Justin Harris, Motion for Summary Judgment **[DE 27] is denied**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of January, 2018.

                                              KENNETH A. MARRA
                                              United States District Judge